225 A.2d 515.

DORA PARRILLO *vs.* NICOLA SIRAVO.

JANUARY 11, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This is a bill in equity to cancel a promissory note and mortgage on certain real estate owned by the complainant and located in the city of Cranston, or in the alternative to enjoin the transfer or other disposition of said note and mortgage or the foreclosure of the mortgage. After a hearing before a justice of the superior court on bill, answer and proof, a decree was entered declaring the note and mortgage null and void and of no legal effect. The cause is before us on the respondent's appeal from the decree.

From the record it appears that in 1960 respondent owned an improved parcel of real estate located on West Shore Road in Warwick. It was leased to a tenant who used the large frame wooden building located on the premises for the conduct of a nightclub or tavern, known as Casey's Tavern, under a class B liquor license. When the tenant died early in 1960 the liquor license as well as the tavern's furniture, fixtures and equipment were offered for sale by his estate and at about the same time respondent's real estate was put on the market and listed with a broker. The complainant's nephew, Carlo J. Parrillo, became interested and he offered $20,000 for the real estate and an additional sum for the license and personal property. Those offers were tentatively accepted by the broker subject, however, to the twofold condition that the approval of the owners be obtained and that both transactions be subject to a transfer of the liquor license. A deposit of $1,000 was given and the broker, who apparently was authorized to solicit customers for the estate's personalty as well as for

respondent's realty, gave a receipt[1] which included a description of the property to be sold and spelled out the conditions upon which the sales were predicated.

These proposals were in due course accepted by the sellers and the real estate closing took place on July 5, 1960. On that day respondent executed and delivered a warranty deed of the real estate and in payment therefor received two interest-bearing notes. One was for $16,000 and the other for $4,000. Carlo was the maker of the larger and it was secured by a purchase money mortgage on the premises conveyed. The other was complainant's note. It was payable one year from date and was secured by a mortgage on complainant's residence located in the city of Cranston. The complainant's note and mortgage were absolute and unconditional on their faces, and were delivered to respondent's attorney who, in due course, recorded the mortgage.

Soon after the closing it became apparent that approval for a transfer of the liquor license could not be obtained. What then transpired between Carlo and respondent, although the subject of extensive testimony, is not pertinent here except to note generally that respondent, even though aware that the liquor license could not be transferred, refused to restore the status quo and in August 1961 foreclosed the purchase money mortgage. Several months thereafter complainant, who then was in default on her obligations no payments of either principal or interest hav-

---

[1] "Muratore Agency      No. 03376
935 West Shore Road, Phone: Regent 7-6460
Warwick, Rhode Island

Date May 14 1960

Received Of Carlo J. Parrillo One Thousand and 00/100 Dollars $1,000 00/100 Deposit on 951-955-957 West Shore Rd — Plat 332 Lots 742, 458, 459, 478, 479 together with the existing Class B License subject to the owners approval, subject to the transferring of said License. This includes all furniture fixtures & improvements.

Joseph R. Muratore, Realtor
By J. R. Muratore"

ing been made, was notified by respondent that foreclosure proceedings against her property would be commenced unless the interest on her note was paid. Thereupon, instead of acceding to that demand, she consulted counsel and these proceedings were commenced.

On this record the trial justice found as a fact that "the mortgage was subject to the liquor license and that she granted the mortgage on that condition." Predicated on that finding and on the failure of the stipulated condition to occur he held that the note and mortgage were null and void. The respondent attacks that legal conclusion and thereby poses the question of whether parol is available to establish that a note and mortgage, absolute and unconditional on their faces, may be conditionally delivered.

The parties approach the problem as if the sole consideration were whether the understanding that the instruments were subject to a transfer of the liquor license was a precedent or a subsequent condition. In the resolution of that issue we have no difficulty. The trial justice found that complainant intended her obligations to take effect only if a future event occurred, namely, the approval for a transfer of the liquor license.

There is ample basis for that finding in the oral testimony as well as in the written receipt. The respondent obviously recognizes that basis because he does not challenge the finding notwithstanding that his possession of the mortgage deed was at least prima facie evidence of a valid delivery. *Lambert* v. *Lambert*, 77 R. I. 463, 468. The recital in the receipt that the offers to purchase were "subject to the transfering of said License" clearly connotes that the instruments required to effectuate the buy-and-sell agreements depended for their validity on future approval being obtained for a transfer of the liquor license. See *F. W. Berk & Co.* v. *Derecktor*, 301 N. Y. 110. Once the trial justice read the terms of that receipt into the instruments executed by complainant he was free to find, as he

did, that at the closing on July 5, 1960 she in effect said: "This delivery of my note and mortgage is conditioned upon my nephew obtaining a transfer of the liquor license." The effective date of these instruments, notwithstanding their present delivery, was postponed pending the taking place of a subsequent occurrence. They did not upon that delivery become presently existing valid obligations which the happening of some future event might either modify or nullify. The law recognizes the former; it rejects the latter. *Supreme Woodworking Co.* v. *Zuckerberg,* 82 R. I. 247, 252; *Allen* v. *Marciano,* 79 R. I. 98; *Sweet* v. *Stevens,* 7 R. I. 375.

Our problem, however, involves more than whether the condition was precedent or subsequent. We have before us not only a negotiable instrument but a conveyance which the law previously required to be under seal, and the authorities are by no means in agreement that a conditional delivery of such an instrument, at least where made directly to the grantee, is entitled to recognition.

While from early times parol evidence has been allowed to show that the taking effect of instruments such as promissory notes, or contracts of sale, was intended by the parties to be conditioned upon the performance of some future act or the happening of some subsequent occurrence, *Lopato* v. *Hayman,* 43 R. I. 271. *Sweet* v. *Stevens, Allen* v. *Marciano, supra,* such evidence at common law was not permitted where the instrument was a conveyance requiring a seal.

The relaxation of that strict rule in situations where the deed has been manually transferred in escrow to a third party for eventual handing to the grantee has not been extended, however, except in a few states, to instances where the transfer, instead of being in escrow, has been directly to the grantee. In such a case a majority of the courts have said that a deed absolute on its face cannot be conditionally deposited in escrow with a grantee. As a

consequence they have ignored the grantor's specific intention, they have disregarded the condition he imposed, and they have held that the delivery is absolute. The justification for that result rests on the theory that to permit parol would open the door wide to fraud and fabrication. *Medusa Portland Cement Co.* v. *Lamantina,* 353 Pa. 53; *Sweeney* v. *Sweeney,* 126 Conn. 391.

This refusal to allow evidence that a grantor intended his manual transfer of a deed directly to a grantee to be on condition, Professor Wigmore characterizes as a modern-day relic of primitive formalism. It hangs over, he says, from the real property concept of livery of seisin where without a transfer of a piece of sod or some other symbol signifying a transfer of the land itself there could be no passage of title. 9 Wigmore, Evidence (3d ed.) §§2405, 2408. See also 4 Tiffany, Real Property (3d ed.) §1049, p. 226; Tiffany, Conditional Delivery of Deeds, 14 Colum. L. Rev. 389; and Ballantine, Delivery in Escrow and the Parol Evidence Rule, 29 Yale L. J. 826.

Although we have not heretofore, as far as we are aware, been faced with this precise question, we have had cases where the physical transfer of the deed has been accompanied by a request or a direction from the grantor that the conveyance was not to become operative until his death. Without differentiating between transfers made directly to the grantee and those to a third person to be held for the grantee's benefit, we have in those cases unhesitatingly permitted inquiry into the facts surrounding the delivery and have allowed testimony of what was said and done relative to the transfer. In each case we used those facts and circumstances to ascertain whether the grantor intended to part with dominion and control over his property. While we at no time referred specifically to the parol evidence rule, our ultimate decision in each case turned on whether the parol freely admitted established an absolute or a conditional delivery.

For example, upon parol evidence we found in *Johnson* v. *Johnson*, 24 R. I. 571, and *Wetherill* v. *Moore*, 73 R. I. 140, that the delivery to a third person was with the intention that it should not be turned over to the grantee until the grantor's death; in *Alker* v. *Alker*, 54 R. I. 326, and *Rowan* v. *Betagh*, 83 R. I. 5, that the delivery directly to the grantee was conditional upon the deed not being recorded until after the grantor's death; in *Lambert* v. *Lambert*, 77 R. I. 463, that notwithstanding the grantee's possession of the deed there was no valid delivery; and in *Lockwood* v. *Rhode Island Hospital Trust Co.*, 62 R. I. 494, that the delivery was subject to the oral understanding that the deed would not be recorded, that no title would pass during the grantor's life, and that passage of title was contingent upon the grantee surviving the grantor.

Tiffany and Ballantine say that there is an obvious distinction between a delivery conditioned upon the death of the grantor, a contingency which must of necessity occur, and the ordinary conditional delivery where the future event may never happen. 4 Tiffany, Real Property (3d ed.) §1054 at 246; Ballantine, 29 Yale L. J. at 840; Tiffany, 14 Colum. L. Rev. at 403. That distinction has sufficed under varying rationales as justification for permitting parol to establish the grantor's intention that title will not pass until his death. *Kelly* v. *Bank of America Nat'l Trust & Savings Ass'n*, 112 Cal. App.2d 388; *Burt* v. *Burt*, 116 Utah 188. While we concede the existence of the distinction, we are unable to concede its validity as a reason for allowing parol evidence in the one case and refusing it in the other. Whether the condition be one that must be satisfied, or one that may never occur, the delivery is nonetheless conditional and the same rationale which permits the reception of parol to ascertain the grantor's intention relative to the passage of title in the one situation should obtain also in the other.

However limited the departure from the old rule may be,

in our judgment the better rule, and it is the rule which is implicit in our *delivery to take effect upon death cases,* allows parol to show a condition precedent not only where the deed has been turned over to a third person for eventual delivery to the grantee but as well where it has been placed directly in the hands of the grantee. In this regard, Tiffany says: "That the mere physical transfer of the instrument should, in any jurisdiction, be allowed to override the grantor's explicit declaration of intention that the instrument shall not be immediately operative, is a striking illustration of the persistence of the primitive formalism before referred to." 4 Tiffany, Real Property (3d ed.) §1049 at 229. He follows this criticism with the observation that the same reasoning which permits parol to establish a conditional delivery of a negotiable instrument or a contract of sale should apply with equal force in the instance of a conveyance and that in all cases the true test should be the grantor's intention as to when he intended title to pass. 9 Wigmore, Evidence (3d ed.) §2408 at 24, comments that:

> "A conditional delivery *in escrow to the grantee,* however, has come down to us traditionally as a complete act, the condition being deemed vain. But this is an arbitrary distinction; no reason and no policy justifies it. * * * But it is being gradually cut away, sometimes by subtly re-casting the definition of a delivery; and the solid establishment of the contrary rule * * * for contracts and writings in general (*i.e.* other than sealed instruments—bonds and land-deeds) will ultimately efface this last tradition of formalism."

See also in accord Tiffany, 14 Colum. L. Rev., p. 389; Ballantine, 29 Yale L. J. at 834; 3 American Law of Property, §12.66, p. 316; *contra,* 6 Powell, Real Property, ¶897, p. 234. A minority of the courts follow the lead of the text writers. *Chillemi* v. *Chillemi,* 197 Md. 257; *Cox* v. *McCartney,* 34 Tenn. App. 235; *Burnett* v. *Rhudy,* 137 Va. 67. See *Lerner Shops of N. C. Inc.* v. *Rosenthal,* 225 N. C. 316, 319.

In *Chillemi, supra,* the matter is put tersely at 264:

"But there is actually no logical reason why a deed should not be held in escrow by the grantee as well as by any other person. The ancient rule is not adapted to present-day conditions and is entirely unnecessary for the protection of the rights of litigants. After all, conditional delivery is purely a question of intention, and it is immaterial whether the instrument, pending satisfaction of the condition, is in the hands of the grantor, the grantee, or a third person. After the condition is satisfied, there is an operative conveyance which is considered as having been delivered at the time of the conditional delivery, for the reason that it was then that it was actually delivered, although the ownership does not pass until the satisfaction of the condition."

In the instant case the execution and delivery of the note and mortgage were conditioned upon the possibility of a future event or occurrence, namely, the approval of Carlo's application for a transfer of the class B liquor license for Casey's Tavern. Evidence to support that finding was admissible and available to the trial justice in the fact-finding process because it went to the question of whether the note and mortgage ever came into effect as binding obligations. *Supreme Woodworking Co.* v. *Zuckerberg; Allen* v. *Marciano; Sweet* v. *Stevens, supra.* Pending the happening of the event upon which the delivery was conditioned, the note created no obligation and the mortgage deed conveyed nothing. When it finally became definite that the event could not occur and that the condition could not be satisfied both instruments lost their efficacy and it became the respondent's obligation to return them to the complainant. 4 Tiffany, Real Property (3d ed.) §1053 at 241. When he failed in the performance of that obligation it was proper for the trial justice to declare them null and void and of no effect.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Grande & Grande, Corinne P. Grande,* for complainant.

*A. Anthony Susi,* for respondent.